UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES C. JACKSON,

          Plaintiff,

v.                                             Case No. 25-CV-1166

ILLINOIS CENTRAL RAILROAD COMPANY, et al.,

          Defendants.

## DECISION AND ORDER

**1. Background**

James C. Jackson was a manager for Illinois Central Railroad Company until it terminated him after finding that he had falsified records. (ECF No. 1-1 at 18.) According to Jackson's complaint, the allegations in which the court accepts as true at this point, Illinois Central suspended him on June 27, 2023, while it investigated whether Jackson engaged in misconduct. The following day Jackson sent an email to the railroad's chief executive complaining about "overdue due process, procedural irregularities, and potential discrimination." (ECF No. 1 at 3.) She never responded. (ECF No. 1 at 3.)

On August 2 and 4, 2023, Anita Culen, Illinois Central's HR representative texted Jackson that its investigation was "still ongoing." (ECF No. 1 at 3.) On August 11, 2023, while still suspended by the railroad, Jackson went on FMLA leave due to

"stress and anxiety around work" and "concerns with high blood pressure." (ECF Nos. 1 at 3; 1-1 at 10)

On August 16, 2023, Jackson was seen by his doctor "for multiple medical issues." (ECF No. 1-1 at 9.) His doctor recommended that "he remain off work the next 6 weeks (around 9/27/23) to address these serious medical issues." (ECF No. 1-1 at 9.) Jackson requested to extend his leave, and Culen responded by requesting a Teams meeting for the next morning. (ECF No. 1 at 3.)

During that meeting on August 17, 2023, Culen terminated Jackson's employment. (ECF No. 1 at 4.) It was not until more than 60 days later that Illinois Central notified its FMLA administrator that Jackson had been terminated. (ECF No. 1 at 4.)

Jackson filed a complaint with the EEOC on November 7, 2023, alleging that Illinois Central discriminated against him because of his race, in violation of Title VII. (ECF No. 13-1 at 2.) On February 24, 2025, Jackson filed an amended charge of discrimination adding a claim that Illinois Central failed to accommodate his disability in violation of the Americans with Disabilities Act. (ECF No. 13-2 at 2.) The EEOC issued a right to sue letter on July 18, 2025. (ECF No. 1-1 at 1.) Jackson, proceeding pro se, filed this action on August 6, 2025. (ECF No. 1.)

The defendants[1] on October 8, 2025, moved to dismiss Jackson's complaint. (ECF No. 12.) That motion is now ready for resolution. The court has jurisdiction under 28 U.S.C. § 1331.

**2. Motion to Dismiss Standard**

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to

---

[1] Jackson initially named Canadian National Railway Company, Tracy Robinson, Josee Girard as defendants but later voluntarily dismissed them as defendants. (ECF No. 18.)

relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)).

3. Analysis

   3.1. **Family and Medical Leave Act**

"The FMLA entitles an eligible employee to take up to 12 weeks of leave from work each year '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position.'" *Myers v. Sunman-Dearborn Cmty. Sch.*, 142 F.4th 527, 533 (7th Cir. 2025) (quoting 29 U.S.C. § 2612(a)(1)(D).) An employer cannot interfere with an eligible employee's attempt to take leave, 29 U.S.C. § 2615(a)(1), or retaliate against an employee for exercising any right protected by the FMLA, 29 U.S.C. § 2615(a)(2).

Jackson's FMLA interference and retaliation claims overlap in that he alleges that by firing him rather than extending his leave the defendants both interfered with his FMLA rights and retaliated against him for exercising his FMLA rights. The claims, however, are distinct as each requires proof of different elements.

   3.1.1. **Interference**

To sustain an FMLA interference claim, a plaintiff must be able to prove: "(1) [he] was eligible for FMLA protection; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to take leave under the FMLA; (4) [he] provided sufficient notice

of [his] intent to take leave; and (5) [his] employer 'interfered with, restrained, or denied FMLA benefits to which he was entitled.'" *Myers*, 142 F.4th at 533 (quoting *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022)). But to win relief, the plaintiff must also prove that he suffered prejudice, *i.e.*, damage or harm, from the violation. *Ziccarelli*, 35 F.4th at 1084.

The defendants argue that Jackson's interference claim fails because he cannot show he was prejudiced by any alleged interference—he was going to be fired anyway for unrelated reasons. (ECF No. 12 at 10-11.) After all, Illinois Central suspended Jackson before he ever sought FMLA leave, which in turn supports the inference that Jackson's termination had nothing to do with his FMLA leave.

But at the motion to dismiss stage, the court is concerned with plausibility. Only if there is no plausible way that Jackson could show that Illinois Central interfered with his FMLA rights may the court dismiss his claim.

Not all misconduct results in an employee's termination. If Jackson could show, for example, that other Illinois Central employees who engaged in the sort of misconduct that Illinois Central found he committed usually receive discipline short of termination, a reasonable finder of fact could conclude that Illinois Central interfered with his FMLA rights by terminating him instead of granting his extension request. Nothing in the pleadings renders such a conclusion implausible. Jackson has stated a plausible FMLA interference claim.

### 3.1.2. Retaliation

"The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act.'" *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)); *see also Myers*, 142 F.4th at 33.

For similar reasons, Illinois Central is not entitled to dismissal of Jackson's FMLA retaliation claim. If similarly situated employees were not terminated, it is plausible that a jury may find that but for Jackson's request for FMLA leave or his request for an extension he would not have been terminated. *See Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, ___, 2025 U.S. App. LEXIS 20747, *27 (7th Cir. 2025) ("To make out an FMLA retaliation claim, Lohmeier must show that her FMLA request was the 'but-for' cause of her termination."). But Jackson will ultimately need more than the fact that he was terminated one day after requesting an extension of his FMLA leave in order to get this claim before a jury. *Id*. For the time being, however, the court will deny the defendants' motion to dismiss Jackson's FMLA claims.

### 3.1.3. Defendants

In addition to Illinois Central, Jackson named Anita Culen, Manuel Salazar, and Mark Grubbs as defendants. FMLA claims may be asserted only against an employer. *See* 29 U.S.C. § 2617(a)(1). The definition of employer, however, includes

"any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Thus, managers or supervisors may be individually liable for violations of the FMLA. *Elder v. Elliott Aviation, Inc.*, No. 4:15-cv-04123-SLD-JEH, 2016 U.S. Dist. LEXIS 127789, at *8 (C.D. Ill. Sep. 20, 2016); *Smith v. Univ. of Chi. Hosps.*, No. 02 C 0221, 2003 U.S. Dist. LEXIS 20965, at *17-18 (N.D. Ill. Nov. 20, 2003) (noting that the FMLA's definition of employer tracks the definition in the Fair Labor Standards Act that has been held to include managers and supervisors); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012) ("the FMLA regulations leave little doubt that individual liability is available under the FMLA"); 29 C.F.R. § 825.104(d).

It is a basic principle of law that a plaintiff does not expand his potential recovery by naming additional defendants or pursuing additional theories of recovery for the same wrong; he is entitled to recover only once for whatever damages he sustained as a result of a violation of the FMLA. *See Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018) ("Generally, a plaintiff is only entitled to a single recovery for a single injury, regardless of how many defendants could be liable for that single injury, or how many different theories of recovery could apply to that single injury."). Thus, provided the employer is solvent, a plaintiff is likely to gain little by naming individual supervisors as defendants. *Cf. Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012) (noting that the plaintiff was suing his former supervisors because the corporate employer was bankrupt). Naming

individual supervisors or managers may prove fruitless, but that does not make it improper.

A supervisor or manager must nonetheless have been personally involved in the denial of the plaintiffs' FMLA rights to be personally liable. *See Diaz v. Legion Pers., Inc.*, No. 10 C 1500, 2010 U.S. Dist. LEXIS 97494, at *7 (N.D. Ill. Sep. 15, 2010) (quoting *Austin v. Cook County*, No. 07 C 3184, 2009 U.S. Dist. LEXIS 23536, 2009 WL 799488, at *3 (N.D. Ill. Mar. 25, 2009)); *Baier v. Rohr-Mont Motors, Inc.*, No. 12-cv-8234, 2014 U.S. Dist. LEXIS 160958, at *25 (N.D. Ill. Nov. 17, 2014).

All Jackson says about Grubbs is that he "is CN's former Vice President of Mechanical and current VP of Safety. He had oversight over Plaintiff's department and influenced employment-related decisions." (ECF No. 1 at 2-3.) "CN" refers to Canadian National Railway Company, an entity allegedly affiliated with Illinois Central, but Jackson dismissed Canadian National Railway Company as a defendant. Even accepting Jackson's bald allegations that Grubbs nonetheless had some manner of oversight and influence over Jackson, these allegations are insufficient to form a plausible basis for personal liability under the FMLA. Jackson does not even allege that Grubbs knew of Jackson's request for FMLA leave. Jackson has not alleged a plausible FMLA claim against Grubbs and accordingly, the court will dismiss Jackson's FMLA claim against him.

Similarly, all that Jackson says about Manny Salazar is that he was present during the meeting where Jackson was terminated. (ECF No. 1 at 2.) Salazar's mere presence says nothing about his role or knowledge regarding Jackson's FMLA leave.

Jackson has not alleged a plausible FMLA claim against Salazar. and accordingly, the court will dismiss Jackson's FMLA claim against him.

Anita Culen, on the other hand, is described as the HR official who both directly administered Jackson's FMLA leave and terminated him. These circumstances plausibly give rise to individual liability under the FMLA. *See Diaz*, 2010 U.S. Dist. LEXIS 97494, at *8. Therefore, the court will deny Culen's motion to dismiss the FMLA claim against her.

### 3.2. Americans with Disabilities Act

"The ADA prohibits employers from discriminating against 'a qualified individual on the basis of disability.'" *Myers*, 142 F.4th at 534 (quoting 42 U.S.C. § 12112(a)). To prevail on an ADA claim, a plaintiff must be able to prove that (1) he is disabled; (2) he is otherwise able to perform the essential functions of his job, either with or without a reasonable accommodation; (3) he suffered an adverse employment action; (4) and the adverse employment action was caused by his disability. *Id.* (quoting *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022)).

"Administrative exhaustion is a prerequisite to bringing a claim under the Americans with Disabilities Act." *Reese v. Krones, Inc.*, 811 F. App'x 371, 372 (7th Cir. 2020) (citing 42 U.S.C. § 12117(a) (incorporating exhaustion requirement of § 2000e-5(e)(1))); *see also Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (citing *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 812 (7th Cir. 2014)). "[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be

expected to develop from an investigation into the charges actually raised." *Riley*, 909 F.3d at 189 (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)).

Jackson alleges that Illinois Central violated the ADA in August 2023 because, when it refused to extend his FMLA leave, it failed to accommodate his disability. (ECF No. 13-2 at 2.) Jackson had 300 days from the date of the alleged unlawful employment practice to present an ADA charge to the EEOC. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004).

A plaintiff must timely present an ADA charge in order to exhaust his administrative remedies. And a plaintiff must exhaust his administrative remedies to pursue an ADA claim in court. Thus, if a plaintiff fails to timely present a claim to the EEOC, he cannot later bring that claim in a lawsuit.

Jackson timely filed an EEOC charge, but that charge included only an allegation of race discrimination. When he amended that charge on February 24, 2025, to allege that his termination on August 17, 2023, also violated the ADA (ECF No. 13-2 at 2-3), he was more than eight months too late.

The 300-day deadline seeks to ensure that an employer receives notice of an employee's claim in time to investigate before memories grow stale or evidence is lost. Although an employee may amend a charge, amendment is limited:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12(b). "[A]n untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge." *Fairchild v. Forma Sci.*, 147 F.3d 567, 575 (7th Cir. 1998).

Race and disability discrimination are distinct theories. There is nothing about race discrimination generally or specifically as Jackson presented it here that would prompt an investigation into what Jackson alleges constituted disability discrimination. Race and disability discrimination arise from separate statutory schemes and require significantly different evidentiary proof. Consequently, Jackson's ADA claim does not relate back to his race discrimination claim. *See, e.g.*, *Applegate v. St. Vincent Health, Inc.*, No. 1:22-cv-01097-JPH-MG, 2023 U.S. Dist. LEXIS 89615, at *12-13 (S.D. Ind. May 23, 2023) (holding that ADA claim did not relate back to religious discrimination claim).

Because Jackson first presented his ADA claim more than 300 days after the event giving rise to his claim, he did not timely present it to the EEOC. By failing to timely present the claim to the EEOC, Jackson failed to exhaust his administrative remedies, and without exhaustion he cannot bring the claim in court. *See Boyd v. Protestant Mem'l Med. Ctr.*, No. 3:23-CV-3961-NJR, 2025 U.S. Dist. LEXIS 128452, at *6 (S.D. Ill. July 7, 2025) (citing *Fairchild*, 147 F.3d at 574). The court will grant the defendant's motion to dismiss Jackson's ADA claim.

### 3.3. 42 U.S.C. § 1981

Jackson's complaint does not present a "Claim[] for Relief" for race discrimination under Title VII. (ECF No. 1 at 4-5.) Rather, he presents a race

discrimination claim under only 42 U.S.C. § 1981. (ECF No. 1 at 5.) He supports this claim with the following: "Upon information and belief, similarly, situated non-Black employees were afforded favorable treatment, including resignation options, retirement transition, or accommodation. And this claim will be supported in discovery." (ECF No. 1 at 5.)

The defendants argue that this allegation is entirely speculative and thus insufficient to state a claim. (ECF No. 12 at 9-10.)

Title 42, United States Code, Section 1981 'protects the right of all persons 'to make and enforce contracts' regardless of race." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981(a)). "To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996). Although Jackson does not allege that he had an employment contract with Illinois Central, an at-will employment relationship is sufficiently contractual to give rise to a claim under § 1981. *Walker v. Abbott Labs.*, 340 F.3d 471, 478 (7th Cir. 2003).

Jackson's allegations are bare bones, but it is relatively simple to state a race discrimination claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *White v. Hy-Vee, Inc.*, No. 20-cv-04246-JES-JEH, 2022 U.S. Dist. LEXIS 252108, at *26 (C.D. Ill. May 16, 2022) ("[W]hile the pleading requirement for an employment

discrimination claim is minimal; it is not nonexistent. A plaintiff needs to at least identify the type of discrimination, when it occurred, and by whom."). At the pleading stage a plaintiff must allege a plausible claim with sufficient detail to put the defendant on notice as to the nature of the claim and enable it "to investigate and prepare a defense." *White*, 2022 U.S. Dist. LEXIS 252108, at \*26 (citing *Twombly*, 550 U.S. at 555; *Tamayo*, 526 F.3d at 1085).

"To survive screening or a motion to dismiss, a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Thus, it is not sufficient for a plaintiff to allege that he is a member of a protected class and he suffered an adverse employment action. He must allege something that supports the inference that the adverse employment action was *because* of his protected status. *Id.* at 778.

In alleging that "similarly[] situated non-Black employees were afforded favorable treatment" (ECF No. 1 at 5) Jackson has alleged facts that, if proven, could support the inference that he was fired because of his race. That Jackson cannot yet point to a comparator who was treated more favorably does not mandate dismissal. Identifying a comparator is often a matter for discovery. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). A plaintiff need not plead a prima facie case of discrimination in order to avoid dismissal. *See Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006); *see also Kaminski*, 23 F.4th at 777 ("[A] plaintiff need not allege facts aligning with her claim's every element, which she will have to prove

for her claim to survive summary judgment. She certainly does not need to identify—as the district court seems to have suggested—a similarly situated employee who managed to avoid termination."). Thus, the court will deny the Illinois Central's motion to dismiss Jackson's § 1981 claim.

As for the individual defendants, although § 1981 allows for claims against supervisors and managers, *Smith*, 681 F.3d at 896 (citing *Musikiwamba v. Essi, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)), they are liable only for their own discrimination. In other words, to state a claim against an individual under § 1981, the complaint must allege sufficient detail to suggest that they personally interfered with his right to make and enforce contracts.

As discussed above with respect to Jackson's FMLA claims, the complaint contains essentially no allegations regarding any actions taken by Salazar or Grubbs. Consequently, Jackson has failed to state a § 1983 claim against Salazar or Grubbs. As for Culen, although Jackson alleges that she was the one who administered his FMLA leave and he suggests that she was the one who made the decision to fire him, nothing Jackson alleges supports the inference that Culen acted because of his race. Jackson does not allege, for example, that Culen was the same person who chose not to fire the yet unnamed non-Black comparators. Thus, Jackson has failed to adequately state a § 1981 claim against any individual defendant.

### 3.4. Other claims

Jackson also alleges two other "Claims for Relief." The first he titled "Wrongful Termination / Public Policy Violation." (ECF No. 1 at 5.) The second he titled "Retaliation & Misrepresentation to EEOC."

Employees in Wisconsin are presumptively employees-at-will, meaning they can quit at any time and for any reason, and employers, in turn, can terminate them at any time and for any reason aside from few limited reasons. *See Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 566-70, 335 N.W.2d 834, 837-39 (1983) (discussing employment-at-will generally). Thus, there is generally no cause of action for wrongful termination in Wisconsin. However, an employee may have a wrongful termination claim if his termination was contrary to a well-established and strong public policy. For example, an employer cannot fire an employee because the employee refuses to violate the law. *Id.* at 573, 335 N.W.2d at 840 ("An employer may not require an employee to violate a constitutional or statutory provision with impunity. If an employee refuses to act in an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior."); *see also Bammert v. Don's Super Valu*, 2002 WI 85, 254 Wis. 2d 347, 358, 646 N.W.2d 365, 371 (citing cases where the exception was found to apply). "The public policy exception to employment-at-will is a closely guarded common law concept, and more often than not, courts have 'emphasized the limited scope of the exception.'" *Goggins v. Rogers Mem'l Hosp. Inc.*, 2004 WI App 113, ¶21, 274 Wis. 2d 754, 683 N.W.2d 510 (quoting *Bammert*, 254 Wis. 2d at 357, 646 N.W.2d at 370).

Jackson alleges: "Defendants' conduct violates the public policies embodied in the FMLA, ADA, and Title VII." (ECF No. 1 at 5.) He continues: "Defendants acted with reckless disregard for Plaintiff's legal rights and retaliated against federally protected activity." (ECF No. 1 at 5.)

If an employee alleges that his employer violated the FMLA, ADA or Title VII, his remedy is to bring a statutory action directly under federal law. "[I]f the legislature creates a remedial process, the court will not override that process with the judicially-created public policy exception." *Repetti v. Sysco Corp.*, 2007 WI App 49, ¶9, 300 Wis. 2d 568, 730 N.W.2d 189. The public policy exception to the at-will employment doctrine arises only when the employee has no other avenue to obtain redress for a termination that was contrary to a compelling public interest. *Id.* (holding that termination for employee's compliance with Sarbanes-Oxley did not give rise to a wrongful discharge claim because Sarbanes-Oxley provides its own remedial framework for whistleblowers). An employee cannot repackage FMLA, ADA or Title VII claim as a common law wrongful discharge claim or use a wrongful discharge claim to expand the protections afforded under these statutes. *See id*.

Similarly, Jackson's allegation that the "[d]efendants submitted materially false statements to the EEOC in their Position Statement" does not present a plausible cause of action. Consequently, the court will dismiss both Count IV and Count V of Jackson's complaint.

## 4. Conclusion

Jackson has presented plausible FMLA interference and retaliation claims against Illinois Central and Culen. Jackson has also stated a plausible § 1981 claim against Illinois Central. However, Jackson has failed to present a plausible basis for Salazar and Grubbs to be personally liable, and the court will dismiss them as defendants. Jackson's ADA claim must be dismissed because, by presenting it to the EEOC only long after the 300-day deadline, he has failed to exhaust his administrative remedies. The court must also dismiss his other claims.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss is **granted in part**. The motion is denied as to Jackson's FMLA claims against Illinois Central and Culen and his § 1981 claim against Illinois Central. The motion is granted in all other respects, and all other claims and defendants are dismissed.

Dated at Green Bay, Wisconsin this 4th day of November, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge
